IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-152-D

| | | |
|---|---|---|
| JOSEPH M. WEBSTER, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | **ORDER** | |
| ) | | |
| TOWN OF WARSAW, ) | | |
| ) | | |
| Defendant. ) | | |

On October 15, 2014, the Town of Warsaw ("Town" or "defendant") filed a motion to dismiss [D.E. 9] Joseph M. Webster's ("Webster" or "plaintiff") complaint [D.E. 1]. See Fed. R. Civ. P. 12(b)(6). Webster is the Town's former Chief of Police and resigned from that job on January 4, 2014. In his complaint, Webster alleges that the Town constructively discharged him based on his race and thereby violated Title VII of the Civil Rights Act of 1964. As explained below, the court grants the Town's motion to dismiss.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). The court need not accept a complaint's conclusions of law. See Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 555; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). As for a complaint's factual sufficiency, a party must plead "enough facts to state a claim to relief that is plausible on its face."

Twombly, 550 U.S. at 570. "[N]aked assertions of wrongdoing" cannot "cross the line between possibility and plausibility of entitlement to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotation omitted); see Vitol, S.A., 708 F.3d at 543. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. A plaintiff armed with nothing more than "labels and conclusions" or a formulaic recitation of the elements of a cause of action cannot proceed. Twombly, 550 U.S. at 555 & n.3; Vitol, S.A., 708 F.3d at 543; Francis, 588 F.3d at 193.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Moreover, in considering a motion to dismiss, a court must focus on the complaint. The court also may consider documents attached to the complaint if they "are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

Webster served as the Town's Chief of Police from October 1, 2009, until he resigned on January 4, 2014. See Compl. [D.E. 1] ¶ 4. On December 5, 2013, Webster attended a meeting to discuss the police department with Commissioner-Elect Jimmy Blackburn and Town Manager Shawn Condon. Id. ¶¶ 7–8. The Town operates under a council-manager form of government. Id. ¶ 9. The Town Manager works at the pleasure of the Mayor and the five Town Commissioners. Id. ¶ 9. The Town Manager supervises various departments, including the police department. Id. ¶ 9. At the meeting, Commissioner-Elect Blackburn called Webster "boy" and told him to "stay out of his way or else." Id. ¶ 12. Commissioner-Elect Blackburn also stated that Webster was "useless" and that he did "not like" Webster. Id. ¶ 13.

2

Webster is African American. Id. ¶ 14. Condon and Blackburn are white. Id. During the meeting, and after Commissioner-Elect Blackburn made the above-referenced remarks, Condon did "not come to the aid" of Webster. Id. ¶ 15. Based on Blackburn's comments at the meeting and Cordon's inaction at the meeting, Webster felt that his job was threatened. Id. ¶ 17. Nearly a month later, on January 4, 2014, Webster resigned as Chief of Police. Id. ¶ 19. Webster contends that he was constructively discharged based on his race in violation of Title VII. Id. ¶¶ 19–21.

In order to state a claim of constructive discharge under Title VII, a plaintiff must plausibly allege the "(1) deliberateness of the employer's actions and (2) intolerability of the working conditions." Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353–54 (4th Cir. 1995) (quotation omitted); see Freeman v. Dal-Tile Corp., 750 F.3d 413, 425 (4th Cir. 2014); Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186–87 (4th Cir. 2004); Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004); Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 244 (4th Cir. 1997). To state a claim, the working conditions must be "so intolerable that a reasonable person would have felt compelled to resign." Pa. State Police v. Suders, 542 U.S. 129, 147 (2004). Absent such intolerable working conditions, an employee is expected to remain on the job while seeking redress under Title VII (including for a hostile work environment claim). See id. In other words, stating a claim of constructive discharge under Title VII requires more than is required to state a hostile work environment claim under Title VII. See, e.g., id. at 146–48; Rickard v. Swedish Match N. Am., Inc., No. 13-3729, 2014 WL 6765483, at *3 (8th Cir. Dec. 2, 2014); Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 961 (10th Cir. 2012); Chapin v. Fort-Rohr Motors, Inc., 621 F.3d 673, 679 (7th Cir. 2010); Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010); Whitten v. Fred's, Inc., 601 F.3d 231, 248–49 (4th Cir. 2010), abrogated on other grounds by Vance v. Ball State Univ., 133 S. Ct. 2434 (2013); Steele v. Schafer, 535 F.3d 689, 694–95 (D.C. Cir. 2008);

3

Aryain v. Wal-Mart Stores Tx. LP, 534 F.3d 473, 480 (5th Cir. 2008). Thus, a plaintiff who fails to plausibly allege conduct that changes the terms and conditions of employment sufficiently to create a hostile work environment under Title VII, by definition, fails to plausibly allege working conditions sufficient to prove constructive discharge under Title VII (i.e., working conditions "so intolerable that a reasonable person would have felt compelled to resign"). See, e.g., Suders, 542 U.S. at 147.

Viewing the allegations in the complaint in the light most favorable to Webster, Commissioner-Elect Blackburn's use of the term "boy" in the December 2013 meeting is offensive. Jones v. Dole Food Co., 827 F. Supp. 2d 532, 552 (W.D.N.C. 2011), aff'd, 473 F. App'x 270 (4th Cir. 2012) (per curiam) (unpublished); see Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006) (per curiam). Nonetheless, his single use of that offensive term, even when coupled with his other comments in the meeting and Condon's failure to act in the meeting, cannot reasonably be viewed as changing the terms and conditions of Webster's employment sufficiently to create a racially hostile work environment under Title VII. See, e.g., Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); EEOC v. Xerxes Corp., 639 F.3d 658, 676–77 (4th Cir. 2011); Bonds v. Leavitt, 629 F.3d 369, 385–86 (4th Cir. 2011); Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 336–37 (4th Cir. 2010). Accordingly, and by definition, the complaint fails to plausibly allege the requisite intolerable working conditions for a constructive discharge under Title VII. See, e.g., Suders, 542 U.S. at 146–48; Rickard, 2014 WL 6765483, at *3; Hernandez, 684 F.3d at 961; Chapin, 621 F.3d at 679; Fincher, 604 F.3d at 725; Whitten, 601 F.3d at 248–49; Steele, 535 F.3d at 694–95; Aryain, 534 F.3d at 480. Simply put, Commissioner-Elect Blackburn's comments and the Town Manager's inaction at the December 2013 meeting did not

4

make Webster's working conditions so intolerable that a reasonable person would have felt compelled to resign. See, e.g., Freeman, 750 F.3d at 425; Honor, 383 F.3d at 186–87; Williams, 370 F.3d at 434; Munday, 126 F.3d at 244; Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255–56 (4th Cir. 1985).

In opposition to this conclusion, Webster cites Amirmokri v Baltimore Gas & Electric Company, 60 F.3d 1126 (4th Cir. 1995). In Amirmokri, the plaintiff "testified that [his supervisor] and other co-workers subjected him to epithets about his Iranian origin almost daily and tried to embarrass him in public. The constant stress created by this atmosphere caused him to get an ulcer and eventually to resign." Id. at 1132. The Fourth Circuit held that "[a] reasonable trier of fact could find these conditions intolerable." Id. Unlike Amirmokri, Webster has not plausibly alleged the requisite intolerable working conditions. Furthermore, in evaluating the alleged intolerability of working conditions, the court must view the working conditions "from the objective perspective of a reasonable person." Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006). Accordingly, Webster's subjective feeling that, after the December 2013 meeting, "his continued employment as Warsaw Chief of Police was threatened," Compl. ¶ 17, does not plausibly suggest that Webster's working conditions were objectively intolerable. Hence, the court grants the Town's motion to dismiss Webster's complaint for failure to state a claim upon which relief can be granted.[1]

---

[1] In responding to the Town's motion to dismiss, Webster added allegations concerning Commissioner-Elect Blackburn, including that Blackburn previously attempted to interfere with law enforcement investigations in the Town before the December 2013 meeting. See Pl.'s Br. [D.E. 12] 1. Webster may not, however, use his brief in opposition to the Town's motion to dismiss to amend his complaint. See, e.g., Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); Campbell v. Wells Fargo Bank, N.A., No. 5:13-CV-785-D, 2014 WL 5471911, at *7 (E.D.N.C. Oct. 22, 2014) (unpublished) (collecting cases); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 542 (E.D.N.C. 2008). Thus, the court does not consider the additional allegations.

5

Webster also did not plausibly allege a deliberate intent on the Town's part to force him to quit. "To prove constructive discharge, a plaintiff must at the outset show that his employer deliberately made his working conditions intolerable in an effort to induce him to quit." Heiko, 434 F.3d at 262 (quotation and alterations omitted). "An employer's actions are deliberate only if they were intended by the employer as an effort to force the plaintiff to quit." Id. (quotation omitted).

When Commissioner-Elect Blackburn made the offensive comments, he was not yet a member of the Town's five-member Board of Commissioners. Moreover, even if Commissioner-Elect Blackburn were on the five-member Board of Commissioners when he made the comments, the Town Manager had the exclusive authority under North Carolina law to appoint, suspend, or remove any city officer or employee not elected by the people (including the police chief). See N.C. Gen. Stat § 160A-148. The Town Manager's inaction at the meeting on December 5, 2013, is not sufficient to plausibly suggest the Town deliberately intended to force Webster to quit, particularly given that Webster continued to work for the Town, without incident, until he elected to resign on January 4, 2014. See, e.g., Freeman, 750 F.3d at 425; Honor, 383 F.3d at 187–88; James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 378 (4th Cir. 2004); Carter v. Ball, 33 F.3d 450, 459–60 (4th Cir. 1994); EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992); Bristow, 770 F.2d at 1255–56.

In sum, the Town of Warsaw's motion to dismiss [D.E. 9] is GRANTED, and Webster's complaint is DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief can be granted.

SO ORDERED. This 5 day of December 2014.

JAMES C. DEVER III
Chief United States District Judge